All right, Mr. Brown. Good morning, Your Honors. My name is Montgomery Brown. I was retained to represent Mr. Espinoza. He entered a conditional plea to the Distribution of Child Pornography to preserve his motion to suppress and also appeals his 120-month sentence as substantively unreasonable. Your Honors, here's what happened here. The state court warrant was executed in June 29, 2018 at his apartment in a Des Moines suburb, and a considerable amount of a tip that a single image had been uploaded using a Tumblr account, which was associated with a specific IP address. The search warrant application doesn't tell the judge what Tumblr is or how it works, which I think is important. It doesn't really say what a URL is, which may be of lesser consequence. It doesn't say that at the time the warrant was executed or contemporaneously that the suspect, Mr. Espinoza, still had an active Tumblr account. It doesn't say that the IP address from November of 2017 may still be the same IP address in June of 2018. All the deputy really did in the interim was find out that Mr. Espinoza lived there at the address associated with the apparent IP address uploaded about six months earlier. And I suggest that this is a bad warrant. Well, Counselor, if I understand the briefing, your argument was that those things you've listed essentially make the warrant stale, and that you're making a staleness argument as to the warrant. Is it the substance of your argument? Yes, Your Honor. I contend that from the four corners of the affidavit, all that's depicted is a solitary incident six months previously. Counselor, what's your response or reply to our cases which indicate that cases are not all the same in terms of the evaluation of the passage of time on the effectiveness of a warrant, and that in particular with respect to child pornography, it seems to have a greater shelf life in terms of effectiveness because of the tendency of perpetrators of that particular crime to hold on to the matters that they collect? I have two responses to that. First, this court has not said that there's a blanket continuing offense exception for child pornography offenses that could be satisfied by such boiler plate language in a search warrant application, even if the affidavit possesses the requisite expertise. The time from the date of the information to the execution is but one factor in the Illinois gates equation, and the cases that both parties cite are eminently distinguishable, and I'll just go through it really quickly, but in Horn, the defendant offered to sell videos, and the officer received them, and he talked to a third person about what he had. In Lemon, the police searched a California guy and had 9,000 images and associated him with the defendant in the Eighth Circuit jurisdiction, eminently distinguishable. A non-published Eighth Circuit case, Higher, the court talks about how there was an old hit and there was new downloads. I talked about Horn. In Hayek, H-U-Y-C-K, there was evidence of an S-L-E. There was specific sharing and peer-to-peer network access. We don't have any of that in this case, and Judge Rose even remarked that she wished there had been more indicators, both timely and specific, and there's no really explanation as to why there wasn't any. There's some inference from a detention hearing that the detective simply got busy, but that's no excuse. Under the Illinois v. Gates test, it may factor into the good faith equation, but it doesn't factor into the totality of the circumstances whether there was probable cause in June of 18 to search based upon a solitary single hit back in November of 2017. You could say that this continuing offense argument could apply to any number of federal criminal cases. Drugs, a single wire fraud event from a computer, a sex trafficking event, stolen property, these all have a quality of continuing offenses. Could you say in this particular case that one single controlled by six months earlier gets you into a house six months later? No. Or even a trash rip? No. Do you have the cases that indicate that what happened here is prohibited? I cited two Seventh Circuit cases, Your Honor. Raimondo and an additional Seventh Circuit case. In Raimondo, they found that there was in fact staleness and a lack of timely probable cause, but ultimately it was saved by the good faith exception. I don't believe this case is saved by the good faith exception for the reasons I can articulate, but looking at the four corners of this particular warrant, it's just not there. And the results obviously don't matter, and they're extremely unfortunate and victimizing and troublesome, but they just don't matter. It turns out they were right, but there's nothing from the four corners of the warrant that establishes probable cause approximately six months later. And we submit that there's no real legitimate legal excuse for the affiant to have relied upon this search warrant application. At minimum, it was grossly negligent. If he knew anything about staleness, then he's acting recklessly. Well, what about the good faith exception? Why wouldn't that apply since the magistrate did issue a warrant? I was thinking about this last night, specifically, Mr. Chief Justice. If you stand back at a museum and look at an abstract painting and you're told that it's a masterpiece, you probably believe it, but it may turn out it's a counterfeit or it was done by an elephant or a third grade. And if you drill down on this particular application, paragraph by paragraph, there's nothing really there except for the boilerplate assertions that there's collectors are preferential, they keep the materials, they don't get rid of them, or they bury them into their computer, but there's no specific facts to articulate that. And I submit that in this particular case, the judicial officer simply was unable to perceive and failed to perceive the obvious deficiencies when you drill down to this paragraph by paragraph. And the judicial officer simply failed to contrast this with the trash rip scenario or the controlled by six months earlier scenario, which are not uniquely dissimilar totally. And then certainly in those circumstances, no way would you say that a judicial officer was in a neutral capacity for issuing a warrant, it just wouldn't hold up. So I'd like to save a little bit of time for rebuttal. But I have one question before you stop on the Raimondo case that you mentioned, which is actually from the second circuit. Is there a distinction between accessing an image and uploading an image that's relevant here? I thought there was some question about that because the Raimondo case involved what they called accessing an image. And I thought the suggestion was that when you can somehow access an image without having it stay on your computer. Well, we don't know because the affidavit didn't tell the judge how Tumblr works. And it says uploaded at one point. It says that's true. It says it's uploaded, but that doesn't mean that it doesn't mean necessarily that Mr. Espinoza took it from some medium such as his phone or his computer and then sent it into the ether. We don't know that for certain. We just don't know that because he didn't tell the judge that's how Tumblr works. It may have been on his phone. It may have been from his computer. And he was on the internet at 11 o'clock at night, UTC time. But we don't really know. And I think that's a distinguishing feature. But even if it's true. Wait a minute. How does one upload an image to a website without being on the internet? Upload necessarily implies that you're using some type of a device that has ability to access the internet and move data from your possession to its possession. That's true. But it doesn't mean the image is preserved anywhere because we don't really know how Tumblr works. Did he get it from somebody else and he just sent it along and the nicknick didn't capture the other sender? We don't really know. And it's not an impossible scenario. Tumblr has some differences than Twitter, but you can still pass things along even though you're not that's a fair inference. That doesn't mean he still he still got the image six months later. There just wasn't anything to support that. There's one one line in the affidavit in the boilerplate language that says that these individuals may have erased or deleted files in their electronic media and that's it. There's no elaboration on that. So I'd like to save a time. I hope I answered your question, Judge Collins and Judge Erickson. Thank you very much. Thank you, Mr. Brown. Mr. Essley. Thank you, your honor. May it please the court. This court should affirm the district court's denial of Mr. Espinoza's motion to suppress as well as its 120-month prison sentence. As opposing counsel did, I'll spend my time today speaking about the motion to suppress. In this case, as the district court correctly concluded, probable cause existed to support the warrant in this case because the seven-month-old tip that opposing counsel was discussing was not stale. Now the government is not requesting a blanket continuing offense exception in this case. As opposing counsel said, this is a totality of the circumstances analysis. However, I would like to remind the court that in that analysis, as the district court did here, this court may take all reasonable inferences from the four corners of the affidavit. It may also use its common sense in reviewing the affidavit. And I think doing those things here indicates, as the district court found, that the tip was not stale. The district court aligned on this court's precedent and the affidavit said that two factors showed here that the tip was not stale. And I'll talk about both of those briefly. First of all, the district court said that in child pornography cases, images are kept and hoarded. This court has said exactly that in both Krobik and Hayek, which is cited in the government's brief, that child pornographers generally retain their pornography for extended periods. This court has also said in higher that that observation, that those interested in child pornography hoard the materials, is supported by common sense. And Deputy Harris' affidavit said exactly that. At page 11 and 12 of the addendum, he said that through his training and experience, he knows that pedophiles will preserve the photographs and tapes for future use and gratification. And he said that child pornographers are well known to keep collections on their computer systems in their homes and maintain those collections for extended periods. Now, the second factor the district court noted was that even if someone tries to delete or hide or conceal evidence of crime from their computer, or if it's just a transient matter that comes through the computer and goes out the computer another door, evidence related to those transactions, proof of those images, proof of that data, may still exist. Again, this court agrees with that. The Seventh Circuit does as well in Seaver. I think the best case cited in the government's brief on this point, all of those cases saying that computers and computer equipment are not the type of evidence that rapidly dissipates and degrades, even deleted files are normally recoverable by experts. As Judge Benton said in the Morgan case, computers, quote, leave traces behind when data is present on them. Seaver, Judge Posner from the Seventh Circuit said that that should be common knowledge, again, common sense, that data on your computer is going to be there. I'd also like to add in response to opposing counsel this morning, he seems to be focusing on images and whether an image could still be present on the defendant's computer. However, it's not just images here that the affidavit was seeking. The affidavit was seeking data, records, correspondence, all of the things that underlie that image and that could still be located on the computer, even if the defendant somehow uploaded this matter without leaving any trace of it on his computer, at least known to him. The other thing I did want to comment on is whether the upload here somehow would leave a trace or somehow it would have just happened without any evidence on his computer. We know that the internet was used here. A Tumblr employee received the image and saw the image and notified the National Center for Missing and Exploited Children. So it's not as simple as saying Tumblr is a complete black box based on the affidavit. We know another person received it, and because of that, we know that Mr. Espinosa had possession of that image at one point. Yes, he may have not kept it very long, but he had to have at least had some control and authority over it to forward it on or to post it on to Tumblr. How is that different from Raimondo? So it is different from Raimondo, Judge Carleton. In Raimondo, first of all, I'd just add something this court is plainly aware of, that Raimondo is not controlling on this court, but it is factually dissimilar as well. In that case, there was a nine-month gap between the defendant viewing and accessing child pornography on a website. The Second Circuit opinion says that the defendant was on that website for only 17 seconds. And in that time, he had access to 76 images, but he never clicked on any of those images to actually obtain possession or download those. Here, an upload occurred. We know that Mr. Espinosa had an image and he posted it to Tumblr such that a Tumblr employee saw it. As a result, we know that Mr. Espinosa had technological possession of that image, unlike the defendant in Raimondo, where the Second Circuit said he just viewed, he was browsing, we don't know whether he actually took possession. And in that case, the Second Circuit said that the nine-month gap rendered the warrant stale. On top of that, Raimondo actually acknowledges that other courts had held previously that, quote, subsequent redistribution, end quote, of an image can eliminate a staleness challenge. And I believe Raimondo cited the Seaver case from the Seventh Circuit. The Seaver case, I'd posit to this court, is the most factually analogous case that the government cites in its brief. And I'll talk about that for just a second. In that case, there was a seven-month gap, similar to the gap present here, where between the execution of the warrant and the defendant distributing three images of child pornography. He distributed 16 images total, but three were child pornography. In that case, Judge Posner said that knowledge that the computer data can be retained, even if it's been deleted or hidden or erased from the user's perspective, evidence could still be on there, and that should be common knowledge. And he specifically said that evidence of three crimes could be present on the device, evidence of distribution of child pornography, receipt of child pornography, and possession of child pornography. Again, I think that case is the most in line with the situation presented here. Just to double back to Deputy Harris's affidavit, at page 12 of his affidavit, to which the district court pointed during the suppression transcript, he does say that data relevant to the investigation may be contained in hidden files or deleted files or erased files, and that to locate such data, a special forensic software and process may be used. Now, at page seven and eight of Mr. Espinosa's brief, he admits that case law is contrary to his position. Courts regularly describe child pornography crimes as continuing in nature due to the hoarding habits of child pornographers and the long lifespan of computer data. I'd like to turn now briefly to his argument about trash rips and controlled buys. Just one thing before you turn to that. What's the limiting principle on this continuing offense notion? When, if ever, does the staleness problem kick in? Well, in Seaver, the Seventh Circuit case by Judge Posner, he said that given the nature of computer technology as it stands today and the ability of forensic experts to retrieve data that even be deleted or put in your trash bin for a user, a lay person like me, he says that only in the exceptional case should a warrant to search a computer for child pornography be denied on the grounds of staleness. I think that's accurate given the nature of computers, and I think the computer usage is really what distinguishes this situation from controlled buys, trash rips, sex trafficking. A computer in some ways is too generous. It is a repository of data that is hard to destroy and get rid of. And for that reason, the evidence of crimes contained on a computer or on computer equipment is not readily degraded or readily dissipated. And thus, because of that and because coupling that with the nature of child pornography crimes, the lapse of time just isn't as important. Now, opposing counsel also mentioned the case of wire fraud or a single instance of wire fraud. Again, that's not the case in front of this court. However, I think the limiting principle here is you not only have a computer, you also have this court's longstanding precedent, the statement of the deputy in this case, and the common sense knowledge that child pornographers retain their pornography for long periods of time. In his brief at page 9 and 10, Mr. Espinoza says, well, he's not a collector, and that that should somehow distinguish him from those prior pronouncements of this court that child pornographers generally retain their images and videos for long periods of time. As a general matter, the cases do not distinguish between uploaders and distributors or those that are possessing quantities. In both Krobik and Hayek, this court stated generally that child pornographers generally retain their pornography for extended periods. And in Hayek, this court stated generally those interested in those materials are known to hoard such images and videos. Moreover, in Hayek and in Esty, this court rejected a similar argument and said that because the defendant is unable to show a difference in the habits between his situation in this case, distributing or uploading images, and those that are downloading and browsing those images, because he was unable to show that difference, the argument was rejected. To double back very quickly to Raimonda, as opposing counsel admitted, Raimonda did find the good faith exception applied. And I'd like to turn there now if the court has no further questions in regard to whether the tip was stale. The good faith exception applies in this case. The sole purpose of the exclusionary rule is to deter future Fourth Amendment violations. As a result, in order to suppress evidence, the suppression must yield real deterrent value. But in this case, we simply don't have that. And the heavy cost to the judicial system and society at large of suppression in this case do not justify suppression. Many of the same things I've already talked about, the nature of the crimes involving child pornography, the nature of computers and computer data, supports the conclusion that the officer's reliance on the warrant was in objective good faith. In addition, opposing counsel mentioned that the warrant may be but the good faith exception, as Judge Erickson said in Augard, may apply based on information reasonably known to the executing officer, but not included in the warrant. So all of that information should still be in play for purposes of the good faith exception. On top of all of that, opposing counsel mentions that a statement that the deputy allegedly made at the detention that he just got busy. As the district court said, it's not a question here regarding the good faith exception, whether the officer should or shouldn't have worked the case sooner. It's whether his reliance on the warrant was reasonable. And in this case, his reliance was reasonable. First of all, he completed the affidavit. And perhaps it's not a masterpiece, but the probable cause standard doesn't require masterpieces. It requires a fair probability of evidence being the place to be searched. And we have that here. We also have a situation here where it's not a situation where you're simply being told by somebody in a museum that you're looking at a masterpiece. You've got the deputy himself who completed this affidavit. You've got him then going to an assistant county prosecutor who signs off on the affidavit. And at page 10 of the addendum, you can see that it says the attorney, quote, read and approved this application and end quote, for a search warrant. As this court said in Johnson and other courts have stated, seeking the advice of an attorney before seeking a warrant is an appropriate factor to consider and whether the officer's conduct is objectively reasonable. After obtaining the approval of the assistant county attorney, the officer then went to the judge, submitted the application, and obtained his approval. So we have three individuals here, two of which were not the probable cause standard. And in this case, there's just nothing that shows the warrant is facially deficient or that the affidavit is so lacking in the shared probable cause to render Deputy Harris's reliance on it entirely unreasonable. And for that reason, the good faith exception should apply as well. If there are no further questions, the United States would rest. All right. I don't see any additional questions. Thank you, With respect to Raimonda, I would only point out the following. Raimonda specifically said that the inference of alleged proclivities of collectors is only as strong as the evidence that there actually was collecting, and they listed a number of factors, none of which apply here. We don't have any website subscription or history of images sent other than one, or a history of trading other than one, nor any express admission. So I take that from Raimonda. In the Second Circuit case, my apologies, I intended to reference, which is in my brief, is Perdot-Wentz, and I cited that in my brief. In that case, it was upheld after a successful staleness challenge, and the staleness was predicated on the fact that there just simply wasn't any new fresh event to support probable cause. So for the reasons I've asserted herein, we ask that the court reverse Mr. Espinosa's conviction and remand for further proceedings. It's been my pleasure. Thank you very much. Thank you, Mr. Brown. Thank you also, Mr. Esley. The court appreciates both counsel's participation and argument this morning, and for the briefing which you've submitted, we'll take your case under advisement.